Good morning. Frederick Carroll for Mr. Eunice. In this case, based on Mr. Eunice's supervised release, Mr. Eunice was quite simply, and is currently, presently, set up to fail. His supervised release was that he cannot associate with known felons. Later, further, by a different judge, interpreted the association with felons and members of the Hells Angels Motorcycle Club. However, unlike other cases that have dealt with non-association clauses related to gangs and other groups, Mr. Eunice's non-association was extended through the interpretation of his probation officer to include incidental contacts, meaning that if Mr. Eunice, so much as leaves his house, or in this case, goes to eat gas, stops to help someone who's pulled over on the side of the road, he is then violated and sent back into custody. It didn't happen here, though, did it? It did, actually, Your Honor. The reason he may have had a slightly different requirement may have had something to do with certain property that he owned. That's correct, Your Honor. It was made of that property. That's correct. Do you think that might have been one of the reasons? He is the owner of the property upon which the Hells Angels Clubhouse in El Cajon, California, is located. Yeah. And so that might explain why the court in this case would make some different arrangements when it spoke about his association, don't you think? Well, certainly, Your Honor. He couldn't go to the clubhouse. He couldn't meet with people or discuss club business or anything like that. In this case, what he did was pull up to get gas, and someone unknown to him that he couldn't see was talking to him over a wall for a very short period of time. He was violated. That's a nice way of characterizing what's in the record on that point. I mean, obviously, you're doing your job, but there are other ways to characterize it, and the district judge appeared to believe, with some basis in the record, that he was there because there was a particularly important meeting, a memorial service, and he was waiting around to talk to somebody over the wall because he wanted to talk to somebody over the wall. And then afterwards, they met up at the local 7-Eleven, following each other down the alleyway. Importantly, Your Honor, there is no information in the record to indicate that Mr. Yunus had any knowledge of the funeral that the court's referring to. He happened to be there and waiting around. That's right, and because he was on non-association, he couldn't have known through contact with other club members that this was going on. It was a club member's brother. Unless he was associating in violation of the order before he shows up at the gas station. If that had happened, but again, that's not in the record. There were findings made here. In fact, with respect to one of the meetings, the judge actually ruled that it was too short, and it wasn't a violation. You're arguing this as if there were no findings made by the trial judge here in the finding of violation. You're just arguing it as if, you know, your client's version is the only one that could have been reached on this record. Well, we definitely support my client's version, and understanding that the trial court, Judge Gonzalez in this case, did say when she concluded things that she thought that Mr. Yunus had gone to a great deal of planning to arrange for these contacts so that they would appear to be incidental, when in fact, Officer Cohen, the probation officer in this case, said that they were not. Nonetheless, the contacts themselves had no indicia of further criminal activity, had no indicia of pre-planning other than a coincidental happenstance with another club member's brother, and didn't last for any substantial duration. Unlike the contacts that the court has ruled on in the King case, where there was repeated planning of sending people letters and sending people wire transfers while they were in jail, and things of that nature, there was nothing like that here. There was a maximum of a two-minute contact. I mean, it wasn't enough that just because that case had a significant amount of evidence that might satisfy it beyond a reasonable death standard, that doesn't mean that every case has to have that quantum of evidence in order to sustain a finding by the trial judge. Certainly not, Your Honor, but our argument is that while, certainly in the King case, those contacts did amount to a violation of the Non-Association Clause, here, the incidental and brief greetings, as they were, hugs and handshakes, do not constitute violations of Mr. Eunice's supervised release, and should not continue to constitute violations such that he can hardly leave his house and go get gas, and if he runs into a felon, then he's going to be violated by his probation officer. Judge Gonzalez actually concluded the hearing that was contested by saying that it was up to Officer Cohen to wholeheartedly determine what the contacts were to be and what the nature of them could be, and Officer Cohen then said on the record that any contact, electronic, mail, telephonic, in person, of any duration whatsoever would be a violation of Non-Association, but that does not comport with what the Court has ruled previously Non-Association means, which is some sort of planned contact and not any sort of business contact or incidental. But we're not here arguing about the conditions later imposed. We're arguing about the condition that was imposed upon him and what he did based upon what the district judge found he did, and it seems to me sufficient to find a probation or supervised violation release even if the contact was relatively short in duration if it was deliberately planned. Now, I'm not asking you to concede that it was deliberately planned, but I'll ask you this. If the judge was permissibly concluding that it was deliberately planned, do you argue that a short contact deliberately planned is not a violation? A short contact in the context of this case, yes, absolutely, Your Honor. We would argue that that is not a violation even if it were deliberately planned. Oh, no, no, no, let me make sure I'm asking the question that you're answering. In the context of this case, with the order outstanding against him at the time of his actions, would a short contact deliberately planned by your client count as a violation? No, Your Honor. Oh, why not? Because the deliberately planned problem is what bothers me. I understand that if he just happens to run into him in an aisle in the grocery store, listen, that one's okay. But if he deliberately planned, I'm going to see somebody over the wall, we're going to talk, we're then going to drive down the alley, we're then going to meet in the 7-Eleven, why does that not count as a violation? Because it still falls into the context of an incidental contact or a social contact that is brief in nature, that doesn't have anything to do with the kind of conduct that is sought to be prohibited by the court, namely engaging in some sort of club business, some sort of planning that might lead to any sort of criminal activity. Here we had brotherly fraternal hugs, for lack of a better term, exchanged. We had information in the light I think most favorable to the government saying, hey, there's a funeral for this guy who's a brother of a guy in the club. And oh, I didn't know that guy had died. So that even if it was, oh, hey, I'm going to be at this, I go to this gas station, holler at me over the wall if you've got any news, even if that's the case, and we're not at all saying that that is the case, we're saying it's coincidental, but even if that is the case, it would not properly constitute a violation of non-association because even if that were planned, it's not the association that I think is deemed to be inappropriate or sought to be prohibited by these kinds of orders. No further prohibited or in any way negative things were resulting from either of these contacts that Judge Gonzalez determined were violations of supervised release. It was merely social or business kinds of contacts, news updates, hi, how are you doing, how are people doing, there's a funeral, I can't go to it, give my best to the family, if indeed that's the kind of thing that was planned, if anything was planned. Can I ask you just a quick practical question? It's not clear to me. What happens if you win? I mean, he's already done the three months in jail. That's right. He still stays on supervised release for, is it the remainder of the term that he had? Until the end of May, May 28th. And so what if you win? What happens? Mr. Yunus doesn't have to be fearful that when he leaves his house, if he runs into someone that he knows and greets them with common courtesy and politeness, asks how their family's doing, that he's going to be found in violation and find himself back in jail. So he's not going to have to worry that he's going to lose his job, which he did in this case, at San Diego Harley-Davidson, because felons and fellow members of Hell's Angels frequently come in, and as he was told, he couldn't have any sort of contact with them without violating it, so he lost his job. So what is it that you're appealing from? If I understood you correctly, even if you win, it has no impact on the sentence that was imposed. That's what I'm asking you, and you're saying that what you want is a kind of a ruling for the future, for the remaining three months of his supervised release. Is that it? Well, we can't give him back the time that he spent in jail, in our opinion, erroneously, but we can give clarification to him and other people on supervised release as to exactly what this means so that he's not going to be found in violation for the remaining term of his supervised release and be kept on supervised release by Officer Cohen for these kinds of incidental contacts. I just want to be sure, so that even if we reverse, it would have no effect on the sentence that was imposed. Essentially, it's all moot, other than you want some sort of advisory opinion on the meaning of the conditions for the remainder of the term. Is that it? So you're appealing from what? What is the specific relief that we could give? I mean, it seems to me that this case is moot, if your answer is correct. No, Your Honor, because if he were to, now through May 28th, have the same kinds of contact that resulted in violations that led him to jail, while we can't give him those three months back, we can say, Mr. Yunus, if you're at a gas station and you see people in your club, or if you get information about a funeral from someone you know, that you're not going back to jail, your supervised release is not going to be continued, and you will actually be done May 28th, provided that you comply with all the terms and that you won't be violated for these things, that you were violated in the past, that that was in fact an error and it should not continue to apply to you or anyone else for that matter. Putting to one side the argument you've just made, this goes to the mootness inquiry made by Judge Corman. Are there collateral consequences from a finding of parole violation? For example, he comes in on another charge of parole violation, and the district judge says, you know, we've been here before, and because this is the second violation, I might give you a longer period of imprisonment. Yes, Your Honor. If the court rules in our favor that those determinations were in fact erroneously made, then I think the district court below in sentencing on any prospective future violation would have to take that into consideration when imposing any sort of punishment for that. Why couldn't that issue be raised at the time? In other words, if in fact the judge wanted to use this sentence, you could say, judge, you can't because what you did before was wrong. I think that issue was raised, Your Honor, and Judge Gonzales said, well, I expect you're going to appeal this to clarify what this means. For right now, this is what it is. My question was a little different. I don't accuse you of anything wrong at all, but you flipped it in the sense that you said, well, if we win, I'm asking what happens if you lose. That is to say, we now have, if you lose, and if we think it's not moot, we say this was in fact a properly found violation of supervised release. Assuming that he's brought in on a second charge, is there something like an enhanced penalty if the judge the second time around says, well, you just did it again, and if this was the first time, I would sentence you to three months, but this is the second time, it's going to cost you six. Is that collateral consequence in play? I believe it is, Your Honor, because the judge is not going to give less or the same punishment for what she would believe to be the same kind of violative conduct. Well, there's a nonbinding guideline that applies in this context, and there has to be a yes or no answer, not do you believe. The question is, if he did it again, would the somehow, would the nonbinding, well, the guidelines are nonbinding now. In a nonbinding sense, yes, yes. In other words, is there something that says that those guidelines increase because it was a second violation of supervised release? Yes, Your Honor, the 3553A factors that the court would look at go into the nature and circumstances of the offense or violation, and that would certainly be a factor that the court would have to consider. So, yes. I hear from the government, you're over time, we'll give you a minute to respond. Thank you. May it please the Court, Joseph Smith, Assistant U.S. Attorney for the Southern District of California for the Appellee of the United States. Just before I forget, to address, I think, what was being asked of Mr. Carroll, regarding whether there would be an enhancement or because of the violation, his criminal history category would not increase. He had a 30-month sentence initially. The additional three months he received on the violation would mean his underlying conviction would be 33 months. His criminal history wouldn't change one single bit. So, therefore, the court would determine his conduct on supervision, but there's nothing binding or advisory within the guidelines which would increase the calculation of his criminal history or of the guideline range. I think you're talking about a subsequent crime. I'm talking about a subsequent supervised release violation. And the guideline range, which is the advisory guideline range, which is set, the recommended range, which was never binding even before Apprendi and before the guidelines became discretionary, that is based upon a criminal history category and then an offense category, whether it be a category A violation, a grade A, grade B, or grade C violation. So, it's based on the conduct, which is the subject of the violation, and also upon his criminal history leading up to supervision. So, that wouldn't change one single bit. And the court would then determine, in looking at this advisory recommended range, look at his conduct on supervision. The only, if anything, it might benefit him because the total amount of time that he could get for subsequent revocations would decrease by three months. There's a total amount of additional time, which is the amount of time the person's on supervision, that can be awarded to somebody. So, actually, the judge, if Judge Gonzalez was very upset and felt the maximum sentence was appropriate, it would actually be three months less than she could have given him would this one be reversed. Oh, so there are collateral consequences in his favor if he loses. That's correct, Your Honor. The total amount of time. Regarding the mootness issue, I think that the appellant brought up two issues on appeal. The initial one was that the term association was unconstitutionally vague. That's something which would repeat because he has a non-association condition. The government feels that the Ninth Circuit case law is controlling. The term association is not impermissible. It's been applied to felons. It's been applied to street gang members. It's been applied to actually people with misdemeanor convictions. The Ninth Circuit has repeatedly said that. It really is, as applied to him, did the court have sufficient evidence to find him in violation that he had associated. I think that's what we're here about. And that is something that could potentially be moot no matter what. Once the court determines, if the court is inclined to do so, that the condition itself was not unconstitutionally vague, then even if the court determined, which the government doesn't think the court should determine, that the court did not have sufficient evidence, that it was an abuse of discretion, that even in looking at evidence in the light most favorable to the government, that no rational trier of fact could find that he associated in violation of the condition, then it still would be moot. When it was vague, wasn't the time to raise that on a direct appeal from the imposition of the terms of the supervised release? That's the... That would be the... I mean, that's the other cases, Soltero and Napoleau, both addressed directly on appeal. They did. And that seems to be the appropriate time. King, which the other case cited, I think in Mr. Carroll's brief, was actually, as applied, and went through a number of violations that King had been involved in, one of which being contact with felons who were in custody. Regarding the violations themselves, Mr. Carroll does address, and the court was concerned somewhat about the type of association that the Soltero court cites to the Arseniega Supreme Court opinion, which talks about incidental contacts. It's a very narrowly tailored exception, and it's actually an exception that the probation officer in this case was aware of In the appellant's excerpt of the records at page 80 through 83, she discusses, actually, when Mr. Carroll was cross-examining her, about his occupation at the Harley-Davidson dealership, and about the fact that he would come into contact with felons working at a Harley-Davidson dealership, and that that was incidental contacts. And actually, in the excerpt of the records, she testifies under oath and uses the term incidental contacts. She was aware of that. These were not incidental contacts. This is not occupational, as Arseniega involved. They weren't necessary, as Arseniega mentioned. This was Mr. Yunus placing himself at a gas station across the street from the Hells Angels Clubhouse, knowing he has a restriction based upon a Vicar conviction involving a fatal shooting between the Mongol motorcycle gang and the Hells Angels motorcycle gang. He knew he could not associate with Hells Angels. He went over to the property line of the Hells Angels Clubhouse, appeared to have a conversation, then leaves the clubhouse and goes back to his car, goes down an alley. The detective that happens to be doing surveillance lost him for a little bit. When he leaves that alley, he's being followed down two turns, down two separate streets, to the 7-Eleven, where the other two individuals were following him in the other truck. Get out. They exchanged what the detective said were bear hugs, and they talked for ten minutes. I think Mr. Carroll discusses and sort of, I think, misapplies the restriction of association, saying, well, it wasn't like they were talking about any criminal activity, or it wasn't like they were talking about Hells Angels business. But that's not the reason there's a non-association condition. And, of course, except for his testimony about what they were talking about, we don't know what they were talking about. That's correct, and there is no actual testimony. I believe in the violation summary, the probation officer mentions that. At the hearing, the probation officer, Mr. Unis, chose not to testify. He doesn't have a need to testify. But the evidence before the judge, for the trier of fact, Judge Gonzalez, was exactly what's in the briefs, which is that he was followed there. He had a ten-minute conversation after exchanging bear hugs. Regarding the other incident, it was shorter in duration, five minutes. The government still feels that time is not the only factor, and really, a lot of times, isn't the most important factor. It's the circumstances of the contact. If he was walking out of the 7-Eleven, ran into Mr. Hudson, and Mr. Hudson was wearing his black vest, as he was wearing, and he just said hello to him, exchanged greetings, and then he walked off, that would be a completely different story. He came up, parked in the gas station, walked over to Mr. Hudson, and spoke with him for five minutes. Unless the court has any further questions, I have nothing further. I took you over, but would you like one minute? Please, Your Honor. Thank you. There would only be a collateral consequence in Mr. Eunice's favor if the same kind of violation is applied to some sort of future behavior that's applied now, and he gets violated again. If properly held, association does not mean incidental contact, does not mean giving people you know bear hugs, walking up to a guy who's parked on his bike and asking, are you okay, then he wouldn't be violated in the first place, and he wouldn't need to have any sort of collateral benefit. Additionally... Wouldn't we have to make a finding of fact to get to where you want us to go? I'm sorry, Your Honor? Wouldn't we have to make a finding of fact to get to where you want us to go? I don't think so, Your Honor. I think the court would simply have to determine that, like Soltero and King, that there has to be more to a violation of a non-association clause, or more directly put, association means something more than running into people you know. Mr. Eunice owns the property that the Hells Angels Clubhouse is on. He was very careful not to go there, not to go to the clubhouse, to meet in public places at the 7-Eleven later, not down the alleyways in some sort of secretive meeting with anyone. It was all very public, so that he was being very careful not to do anything that would be violent of his supervised release. That's still what he was violated for. Thank you. Thank you. Thank both sides. United States v. Eunice now submitted for decision. The next case on the argument calendar this morning, Hantenstein v. Aviation Finance Group.
judges: Korman, Farris, Fletcher